**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

RICHARD A. EVELAND,        )
     Plaintiff,            )
                           )
     v.                 )     CAUSE NO.: 2:16-CV-203-PRC
                           )
NANCY A. BERRYHILL,        )
Acting Commissioner of the      )
Social Security Administration,   )
     Defendant.           )

## OPINION AND ORDER

This matter is before the Court on an Amended Complaint [DE 5], filed by Plaintiff Richard A. Eveland on June 7, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed by Plaintiff on December 27, 2016. Plaintiff requests that the October 9, 2014 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On April 4, 2017, the Commissioner filed a response, and Plaintiff filed a reply on May 10, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

In July 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability since December 28, 2010, when he was involved in a motor vehicle accident. The application was denied initially and on reconsideration. After a hearing at Plaintiff's request, an administrative law judge issued an unfavorable decision, which was subsequently remanded by the Appeals Council for a new hearing. On October 9, 2014, Administrative Law Judge Mario G. Silva ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's non-attorney representative, an impartial vocational expert, and Robert B.

Sklaroff, M.D., an impartial medical expert. On November 19, 2014, the ALJ issued a written decision denying benefits, making the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.      The claimant engaged in substantial gainful activity during the following periods: August 19, 2013 through February 2, 2014.

3.      However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.      The claimant has the following severe impairments: anxiety, panic attacks, adjustment disorder, right ear vestibulopathy, and memory impairment.

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.      After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He must avoid all exposure to unprotected heights and to extreme heat. He is unable to climb ladders, ropes, or scaffolds. The claimant is able to understand, remember, and carry out simple instructions (with a GED reasoning level of 1); to make judgments on simple work-related decisions; and to respond to usual work situations and to changes in a routine work setting. He requires an environment where he would have no more than superficial interaction with the public, but no direct interactions with the public; and only occasional interaction with coworkers and supervisors. The work must be able to be done at a flexible pace (i.e., an environment free of production rate pace where there would be no tandem tasks or teamwork where one production step is dependent upon a prior step).

7.      The claimant is unable to perform any past relevant work.

8.      The claimant was born in 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

9.      The claimant has at least a high school education and is able to communicate in English.

10.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

11.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12.     The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2010, through the date of this decision.

(AR 25-40).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks remand, arguing that the ALJ erred (1) in evaluating Plaintiff's RFC when the ALJ did not find a specific limitation to superficial interaction with coworkers and supervisors and did not account for Plaintiff's panic attacks; (2) by improperly rejecting the opinion of Plaintiff's long-term treating psychologist, (3) in finding Plaintiff fit for work at all exertional levels when the medical expert's opinion found that Plaintiff could perform light level work, and (4) in finding Plaintiff, Plaintiff's father, and Plaintiff's friend not entirely credible. The Court considers each argument in turn.

### A. Residual Functional Capacity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004);

20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

1.   *Superficial Interaction with Coworkers and Supervisors*

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC when the ALJ did not find a specific limitation to "superficial" interaction with coworkers and supervisors, despite medical opinion evidence providing this limitation. The ALJ gave "considerable weight" to state agency psychologist Dr. Amy Johnson's opinions. (AR 29). Dr. Johnson opined that Plaintiff "can relate

on at least a *superficial basis* on an ongoing basis with co-workers and supervisors." (AR 707) (emphasis added). The ALJ explicitly recognized this part of Dr. Johnson's opinion and found that this opinion "regarding . . . interaction with coworkers and supervisors is generally consistent with the overall evidence regarding the claimant's adjustment disorder, anxiety, depression, and memory issues showing improvement with treatment." (AR 29).

Nevertheless, the ALJ did not adopt this restriction. Rather, the ALJ limited Plaintiff to "occasional interactions" with coworkers and supervisors. (AR 23-24). The ALJ offered no explanation for changing the limitation from "superficial interaction" with coworkers and supervisors based on Dr. Johnson's opinion, to which the ALJ gave considerable weight, to "occasional interactions" with coworkers and supervisors.

In *Wartak v. Colvin*, this Court explained the difference between "occasional" contact and "superficial" contact: "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." 2:14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). In *Wartak*, like in this case, the ALJ limited the plaintiff to "occasional" contact with coworkers and supervisors when the expert opined that the plaintiff could engage in "superficial" contact on an "ongoing basis." *Wartak*, 2016 WL 880945, at *7; *see also Gidley v. Colvin*, 2:12-CV-374, 2013 WL 6909170, at *11-12 (N.D. Ind. Dec. 30, 2013); *Sanders v. Astrue*, No. 11-1356, 2012 WL 1657922, at *12-13 (D. Minn. Apr. 17, 2012). Like in *Wartak*, *Gidley*, and *Sanders*, the ALJ in this case offers no explanation for this deviation from Dr. Johnson's opinion. *Wartak*, 2016 WL 880945, at *7; *Gidley*, 2013 WL 6909170, at *12; *Sanders*, 2012 WL 1657022, at *13. The error is compounded because the hypotheticals to the vocational expert did

not included any limitation to "superficial interaction" with supervisors and coworkers. *Wartak*, 2016 WL 880945, at *7.

In her response, the Commissioner did not address the difference between "occasional" and "superficial" interaction raised by Plaintiff in the opening brief. Rather, the Commissioner asserts that the ALJ modeled his RFC finding on the record as a whole—not the opinion of any one doctor— and that the RFC is an administrative decision for the ALJ. The Commissioner attempts to explain what evidence could underlie the ALJ's reasoning in not adopting the "superficial interaction" portion of Dr. Johnson's opinion, including other portions of Dr. Johnson's report, Plaintiff's own reported statements regarding interaction with others, Plaintiff's father's statements regarding Plaintiff's interactions with others, and the testimony of Dr. Carney to which the ALJ gave only "moderate weight." However, the ALJ did not explain why he did not adopt Dr. Johnson's limitation of "superficial interaction" with coworkers and supervisors nor did the ALJ identify the evidence cited by the Commissioner as the basis for disregarding the limitation on "superficial interaction" with coworkers and supervisors. Thus, the Court cannot find that the ALJ's RFC decision is based on substantial evidence in light of Dr. Johnson's opinion. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) ("*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 16-69 (1962))); *see also Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013); *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("But the agency's attorneys may not advance an explanation the agency never made itself . . . .); *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *MacKenzie v. Colvin*, No. 15-CV-198, 2016 WL 727115, at *4 (D.N.H. Feb. 23, 2016).

The Commissioner also argues that Dr. Johnson's limitations were adequately accommodated because Dr. Johnson gave a "qualifying statement" that Plaintiff could relate on "at least" a superficial basis with co-workers and supervisors. This argument is misplaced as the RFC is not the least an individual can do despite his limitations but rather the most, and Dr. Johnson gave no opinion on any different abilities Plaintiff might have to interact with co-workers and supervisors. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

This matter is remanded for proper consideration of Plaintiff's limitations on interaction with coworkers and supervisors. The ALJ can either incorporate Dr. Johnson's limitation to "superficial interaction" with coworkers and supervisors or explain why he rejects the limitation in favor of "occasional interaction" with coworkers and supervisors.

2.      *Panic Attacks*

In his opening brief, Plaintiff argues that, even though the ALJ found panic attacks to be one of Plaintiff's severe impairments, the ALJ failed to address the impact of panic attacks when assessing disability in the RFC and in the questions to the vocational expert. (AR 17-18). Neither the Commissioner in her response brief nor Plaintiff in his reply brief returns to this issue. A review of the ALJ's decision shows that he thoroughly considered and discussed Plaintiff's panic attacks in the context of formulating the RFC. At step two, the ALJ found that Plaintiff's problems with panic attacks were supported by the medical records but that "the records do not support the frequency and intensity of his alleged panic attacks." (AR 22). In the RFC analysis, the ALJ noted that the only medical records regarding panic attacks were in April 2011 when Plaintiff refused transport when having a panic attack, in April 2012 when Plaintiff sought emergency room treatment due to chest pain that was diagnosed as a panic attack, and in February 2014 when Plaintiff sought

treatment after he had a panic attack at work. (AR 28-29). The ALJ noted that, for the February 2014 attack, Plaintiff's symptoms had resolved by the time he arrived at the emergency room. The ALJ then noted, "These are the only instances of any sort of treatment for acute panic attacks. The claimant has not had any regular emergency room visits or hospitalizations due to panic, and the undersigned notes that this lack of treatment supports the claimant's statements during the initial hearing that his panic has improved." (AR 29). As the ALJ fully considered Plaintiff's panic attacks, there is no error.

### B. Treating Psychologist Opinion

Plaintiff next argues that the ALJ improperly rejected the opinion of a long-term treating psychologist—Dr. Schultz, contending that Dr. Schultz's opinion was consistent with treatment notes and corroborated by other evidence.

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. §§ 404.1527(b), 416.927(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id.* §§ 404.1527(e)(2), 416.927(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to

each opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii), (iii), 416.927(e)(2)(ii), (iii). *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. *See* 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2).

The opinion evidence at issue is two reports by Dr. Schultz dated March 13, 2012. In the first, Dr. Schultz found moderate limitations in activities of daily living and maintaining social function, as well as marked deficiencies of concentration, persistence, or pace and three repeated, extended episodes of decompensation on Part B (Rating of Impairment Severity) of the 12.06 Anxiety Related Disorders form. (AR 783). The same date, Dr. Schultz completed a Mental Residual Functional Capacity Assessment form, finding Plaintiff moderately limited in the ability to understand and remember very short and simple instructions, but marked limitations in ability to understand and remember detailed instructions, ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and ability to respond appropriately to changes in the work setting. (AR 785-87). These forms were filled out at the request of Plaintiff's attorney for his disability benefits application.

The ALJ summarized these opinions and, despite Dr. Schultz being Plaintiff's treating therapist, gave the opinions "little weight," finding them inconsistent with Dr. Schultz's treatment notes. (AR 29). Specifically, the ALJ explained that the opinions are "disproportionately inconsistent with his own treatment records which show waxing and waning of his symptoms with

periods of significant improvement of cognitive function and mood and ultimately being able to return to work." *Id.*

Plaintiff criticizes the ALJ for not citing specific treatment notes that were inconsistent with Dr. Schultz's opinion. (ECF 19, p. 16). Plaintiff then argues that the treatment notes were not inconsistent. The Court finds that the ALJ thoroughly discussed Dr. Schultz's treatment records prior to weighing Dr. Schultz's opinion testimony, explicitly noting that "[w]hile the claimant's continued psychotherapy notes with Dr. Schultz indicate some waxing and waning of symptoms throughout 2013 and 2014, overall, these *more recent treatment records* indicate that the claimant was doing better with improved functioning with therapy." (AR 27-28) (emphasis added). These treatment records are as follows.

On November 21, 2011, Dr. Schultz indicated that Plaintiff was responding well to therapy and improving his memory and cognitive abilities. (AR 735). However, one month later, in December 2011, Dr. Schultz's treatment note indicated that Plaintiff continued to have significant anxiety and depression, becoming overwhelmed and tearful. (AR 789). On January 9, 2012, Dr. Schultz reported that Plaintiff continued to work on issues of depression and was very insecure regarding his losses and was very tearful. (AR 920). In February 2012, Dr. Schultz worked with Plaintiff on his insecurity. (AR 921). In March, Dr. Schultz noted Plaintiff's memory issues and panic attacks. (AR 922). In April 2012, Plaintiff was very panicked with a dramatic display of hyperventilation. (AR 923). In May 2012, Plaintiff was stressed. In June 2012, Plaintiff was very depressed, and Dr. Schultz noted that he should be seen more often. (AR 925). On July 3, 2012, Dr. Schultz noted that Plaintiff was very depressed and hopeless. (AR 926). Similarly, Dr. Schultz noted "very depressed with issues" on July 31, 2012. (AR 927). On September 10, 2012, Plaintiff seemed

to be doing better. (AR 928). On October 23, 2012, Dr. Schultz noted that Plaintiff continues to struggle with issues pertaining to memory loss and was fearful. (AR 931). Treatment continued in November and December 2012 with some improvement. (AR 932-37).

Plaintiff continued to show some improvement in January 2013. (AR 904-05). However, on January 21, 2013, Dr. Schultz wrote that Plaintiff continued to complain about memory loss and worried about being able to work. (AR 906). In February 2013, Plaintiff worried about how he will return to work. (AR 908). A session note from March 11, 2013, indicates that Plaintiff had a panic attack in the last couple of weeks. (AR 909). On April 9, 2013, Plaintiff was doing better and was thinking of returning to work but was worried that he could end up being dizzy at work. (AR 910). On May 7, 2013, Dr. Schultz noted that Plaintiff was experiencing sadness and that he was displaying panicking "fueled by cognition." (AR 911). On June 3, 2013, Dr. Shultz indicated that Plaintiff was very anxious and depressed. (AR 912). On July 16, 2013, Plaintiff was "doing better." (AR 913). However, on August 6, 2013, Dr. Schultz noted that Plaintiff "still feels like killing himself" and had "thoughts of suicide" and that "mood swings are present." (AR 914).

On September 3, 2013, Dr. Schultz wrote an "update" letter with the conclusion:

There are some significant emotional problems present. In addition to being depressed and anxious about his condition, there are serious conflicts that have led him to be very angry with others.

As I have worked with him, he has shown some improvement in his functioning. However, he continues to have significant anxiety and depression about his losses. He can be overwhelmed and tearful because of his losses. He feels trapped in his present circumstances.

(AR 915-16). On October 1, 2013, Dr. Schultz noted that Plaintiff continued treatment and was working, which made him feel better. Treatment continued in November and December 2013 with no significant notation.

After going through all of these records in detail, the ALJ concluded: "[W]hile the claimant still has some mental symptoms, Dr. Schultz's records show a trend of improvement in his functioning, even being able to return to work. These records simply do not fully support the claimant's extreme allegations regarding his mental functioning." (AR 28). Although this statement is made in the context of weighing Plaintiff's allegations, it is equally applicable to the ALJ's subsequent finding that Dr. Schultz's extreme 2012 opinions are not supported by these same treatment records.

Therefore, the ALJ did not fail to identify the treatment records he felt did not support the opinion. And, the evidence of record supports the ALJ's conclusion that Dr. Schultz's continuing treatment records in the second half of 2012, in 2013, and in 2014 did not support Dr. Schultz's opinions from March 2012. These records show overall improvement despite some ongoing symptoms. Nor did the ALJ ignore Plaintiff's waxing and waning symptoms, having noted these symptoms but also finding that the longitudinal treatment showed overall improvement. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (recognizing that an individual who is suffering from a "chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days").

Plaintiff argues that the rise and fall in symptoms is supported by neurologist Dr. Pueschel's early opinion that depression and anxiety exacerbated the effect of Plaintiff's brain injury. (AR 788) (December 19, 2011 letter from Dr. Schultz referencing Dr. Pueschel's opinion). The Court agrees. However, Plaintiff's improvement with therapy is also consistent with that early diagnosis; Plaintiff began therapy with Dr. Schultz to treat his depression and anxiety identified by Dr. Pueschel.

Plaintiff also argues that Dr. Schultz's March 2012 opinions are supported by his "own diagnosis of mood disturbance accompanied by a full or partial manic or depressive syndrome." (ECF 19, p. 16 (citing AR 20, 780)). However, Dr. Schultz's "own diagnosis" at page 780 of the record is a series of checkmarks on a preprinted form for "12.04 Affective Disorders" completed by Dr. Schultz on March 12, 2012, as part of the same documentation provided to Plaintiff's attorney. As with the March 2012 opinions, the treatment records following this March 2012 "diagnosis" demonstrate Plaintiff's improvement.

The ALJ gave good reasons for discrediting Dr. Schultz's March 2012 opinions, which include that the opinion is not well supported by medical findings or is inconsistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. 416.927(c)(2); *see also Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) (citing cases). The ALJ explained that, in addition to the medical source opinions from the state agency psychologists and two medical experts, he reached his functional capacity conclusions based also on improvements in Plaintiff's condition that allowed him to return to full-time work from August 2013 to February 2014, as well as his continued part-time work and references to the inconsistencies that suggested a greater capacity and possible malingering. (AR 31). For example, the ALJ noted Dr. Walsh's (a psychological consultative examiner) August 29, 2011 observation that Plaintiff demonstrated improved movement and less impaired functioning in the parking lot after the appointment than he had during the evaluation in the presence of Dr. Walsh. (AR 28 (citing AR 699)). The Seventh Circuit Court of Appeals has held, "This court upholds all but the most patently erroneous reasons for discounting a treating physician's assessment." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ's weighing

of Dr. Schultz's March 2012 opinion is supported by the record and in accordance with the regulations, including his consideration of the factors in 20 C.F.R. § 404.1527(c). The assessment is not patently wrong. Remand is not required on this issue.

### C. Work at All Exertional Levels

Plaintiff argues that the ALJ erred in finding that Plaintiff is able to perform work at "all exertional levels" when the testifying medical expert, Dr. Sklaroff, opined that Plaintiff could perform work at the light exertional level and when the ALJ failed to discuss Plaintiff's impairments in combination.

The ALJ gave "great weight" to the hearing testimony of Dr. Sklaroff, the medical expert. (AR 30). Dr. Sklaroff testified:

> [O]n a physical level he should be able to stand, sit, or walk any one of them up to six hours during normal eight hour day with normal breaks. He should be able to lift at least 20 pounds occasionally, 10 pounds frequently, probably a lot more when he gets back to Spring of Life. He should also be able to go to various posture manipulations, pushing, pulling, lifting, squatting, reaching. There is no problems[sic] with the hands, feet, or special senses. And he should not be at heights with ropes, scaffolds, and ladders. Otherwise no environmental limits.

(AR 64).

The ALJ noted in his decision that Dr. Sklaroff indicated that Plaintiff is "able to sit, stand, and walk 6 hours each in a normal 8-hour day, and that he should be able to lift at least light exertional level weights (and probably a lot more)." (AR 30). The ALJ commented: "Dr. Sklaroff indicated that the claimant should at least be able to perform light work." (AR 30).

Light work is defined under C.F.R. § 404.1567 as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 404.1567(b). Yet, the ALJ found that Plaintiff could perform a "full range of work at all exertional levels." (AR 23). This is inconsistent with Dr. Sklaroff's opinion, to which the ALJ gave "great weight," and the ALJ did not explain how he determined that Plaintiff could perform work at all exertional levels.

In this instance, the error is harmless because the vocational expert identified significant numbers of light jobs as a cleaner housekeeper and garment bagger that accommodated the restrictions for light work with the additional postural limitations adopted by the ALJ. (AR 30, 31, 33 (citing (AR 78-80))). Thus, this issue by itself does not require remand. However, because the Court is remanding for reconsideration of the mental RFC, the ALJ is directed to reconsider the physical RFC in light of Dr. Sklaroff's opinion as to the *least* Plaintiff can do in determining the RFC, which is the *most* Plaintiff can do.

Plaintiff also argues that the ALJ failed to discuss the combination of Plaintiff's impairments, specifically identifying Plaintiff's non-severe impairment of degenerative disk disease with severe spinal stenosis. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (requiring the ALJ to consider the non-severe impairments in combination with all impairments to determine if greater restrictions were warranted). However, the only evidence Plaintiff cites regarding the disk disease is medical records from January 2011, which were less than a month after his December 28, 2010 motor vehicle accident. (ECF 19, p. 21 (citing AR 478, 482-83, 671)). Plaintiff has not offered any evidence regarding any of his non-severe impairments that would suggest the ALJ's RFC determination should have been different.

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff's 2014 diagnosis of chronic diverticulitis/lower abdominal discomfort was not severe on the basis that "it does not satisfy the 12-month durational requirement to constitute a severe impairment." (AR 21). This was an error because the regulations categorize an impairment as "severe" when it is expected to result in death or to have lasted or "be expected to last" for at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. The ALJ erred by only considering that the impairment had not *yet* lasted for 12 months without considering whether the diverticulitis/lower abdominal discomfort was expected to last for at least 12 months going into the future. On remand, the ALJ is directed to consider whether Plaintiff's chronic diverticulitis/lower abdominal discomfort is severe under this standard.

### D. The Weight Given to Third Party Reports and to Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred in the weight given to the testimony of Plaintiff's father Richard Eveland and Plaintiff's friend Tom Hoyt as well as to Plaintiff's own testimony about his symptoms.

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot

support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

First, Plaintiff argues that the ALJ erred in giving only "some weight" to the Third Party Function Reports completed by Plaintiff's father Robert Eveland and Plaintiff's friend Tom Hoyt based on their close relationships with Plaintiff. The ALJ wrote that he gave their opinions "some weight, but notes the potential for bias in light of the familial and personal relationships." (AR 31). In *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013), the Seventh Circuit Court of Appeals

rejected the implication that "if a plaintiff or a defendant (or a relative of either or a fiancé) testifies in a case, the testimony must automatically be discounted for bias . . . ." *Id*. Rather, the "administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief." *Id*. In this case, the Commissioner does not address this issue of bias in her response brief. On remand, the ALJ is directed to make a finding as to whether or not he believes the witnesses, or which part he believed, or whether he had no idea how much of what they said was worthy of belief. *Id*. ; *see also Roque v. Colvin*, No. 15 C 392, 2016 WL 1161292, at *5 (N.D. Ill. Mar. 22, 2016) (citing *Garcia*, 741 F.3d at 761).

Plaintiff also argues that the ALJ applied an incorrect legal standard when the ALJ wrote that neither Mr. Eveland nor Mr. Hoyt's opinion was "fully supported by the evidence of record," (AR 31), because under 20 C.F.R. § 404.953, the ALJ was required to base his decision on the preponderance of the evidence offered at the hearing. Plaintiff conflates the standard for the ALJ's entire decision with the ALJ's assessment of the opinion testimony. The ALJ did not err.

Finally, Plaintiff argues that, in the context of considering these two reports, the ALJ used boilerplate language to reject "any statements regarding the claimant's functional ability that conflict with the above residual functional capacity." (AR 31). If this were all the ALJ had said, his analysis would have been insufficient. However, the entire sentence provides, "Consequently, to the extent that Mr. Eveland's and Mr. Hoyt's statements exceed what would reasonably be expected given the treatment records and medical opinions of record, their credibility is suspect for the same reasons stated above regarding the claimant's allegations, and the undersigned disregards any statements regarding the claimant's functional ability that conflict with the above residual functional capacity."

*Id.* Thus, this sentence is directly linked to the ALJ's analysis of all the record evidence. Plaintiff does not identify any portions of the two statements that he believes should have been weighed differently.

Turning to the ALJ's assessment of Plaintiff's own testimony, Plaintiff argues that the ALJ erred by finding Plaintiff "not entirely credible" because "he improved to the point of working full time for almost six months from August 2013 to February 2014, and he continues to work part-time." (AR 31). Plaintiff's quotation of part of a sentence out of context mischaracterizes the ALJ's full discussion of Plaintiff's statements about his limitation. *See* (AR 31). The full sentence provides: "While he initially was unable to drive, he currently is able to drive, he has improved to the point of working fulltime for almost six months from August 2013 to February 2014, and he continues to work part-time." *Id.* Prior to this sentence, the ALJ again noted the medical records that show improvement in Plaintiff's "balance issues and cervical spine pain, as well as improvement in his mood, cognitive abilities, and frustration. The claimant's diagnostic studies have been generally unremarkable and the claimant's balance has improved over time." *Id.* After the sentence partially quoted by Plaintiff, the ALJ again recognizes the waxing and waning of Plaintiff's mental symptoms and notes "the record contains several references to possible malingering regarding memory and other issues resulting from his motor vehicle accident." *Id.* The ALJ noted Plaintiff's active personal injury lawsuit stemming from the December 28, 2010 motor vehicle accident, and the ALJ noted that "he was fairly dramatic in his presentation, suggesting some embellishment." *Id.* Overall, the ALJ considered the proper factors in weighing Plaintiff's statements about his symptoms. The Court cannot say that his assessment was patently wrong.

Finally, Plaintiff argues that the ALJ erred in assessing his activities of daily living. The ALJ noted that Plaintiff was able to live alone, cook, and drive. (AR 25, 26, 31). Plaintiff asserts that these facts do not contradict his alleged limitations given that Plaintiff testified that, following his automobile accident, he moved closer to his parents so that they could help with his daily activities, including handling his finances and paying his bills. (AR 58-59). Plaintiff's father and friend both separately reported that Plaintiff received help taking care of his pets, remembering to take his medicine, and running errands. (AR 381-84, 392-93, 395). There is no error because the ALJ took these facts into account when weighing all the evidence. *See* (AR 25).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 22nd day of August, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT